UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————x
:
BOTTOM LINE RECORD COMPANY,           :
a Division of THE BOTTOM LINE THEATER- :
CABARET, INC.,                        :
:
                    Plaintiff,        :
:
          -against-                   :
:
JANIS IAN and RUDE GIRL RECORDS, INC. :
:
                    Defendants.       :
:
———————————————————————x

# 1.16-cv-847

Docket # _____

CIVIL ACTION

**COMPLAINT FOR
DECLARATORY JUDGMENT AND
ANTICIPATORY BREACH OF
CONTRACT**

As and for Plaintiff's Complaint, Plaintiff hereby alleges as follows:

## PARTIES

1.(a)    Plaintiff BOTTOM LINE RECORD COMPANY is a Division of The Bottom

Line Theater-Cabaret, Inc., the latter is a New York corporation whose address is 188 East 76th

Street, Suite 7D, County of New York, City of New York, 10021.  Plaintiff was formed in the

State of New York; it's former name was The Bottom Line Record Company, LLC.

(b)    One of the Members of The Bottom Line Record Company, LLC died, and the

LLC continued in existence with the surviving Members.  The LLC transferred its assets and

rights to the Members Allan Pepper and Stanley Snadowsky.  The rights to use the recordings

made at The Bottom Line Theater-Cabaret, Inc. (the "Club") for phonorecords were exercised by

the Club for a period of time.  Thereafter, the rights to use the recordings for the Archive

Collection, and to copyright those recordings, were granted to Bottom Line Record Company.

1

2.(a)    Defendant JANIS IAN is, upon information and belief, a citizen of Tennessee, USA, she is over the age of 18 years and resides at 4501 Granny White Pike, Nashville, Tennessee 37204.

(b)    Defendant RUDE GIRL RECORDS, INC. is a Tennessee corporation and, upon information and belief, it is Janis Ian's personal holding corporation for Ms. Ian's merchandising and intellectual property interests; its principal place of business, upon information and belief, is 2409 21st Avenue South, Suite 202, Nashville, TN 37212-5317.

## NATURE OF THE ACTION

3.    This is an action under the U.S. Copyright Act of 1976, 17 U.S.C. to quiet title to Plaintiff's copyrights in sound recordings and Plaintiff's copyright ownership of (i) the master recordings embodied in Plaintiff's three compact discs listed below, and (ii) to all unreleased recordings fixed by The Bottom Line Theater - Cabaret, Inc. (hereinafter, "the Club") of Janis Ian's other live performances, and spoken words in performance, at the Club:

(A)    *The Bottom Line ENCORE Collection: JANIS IAN* (the "ENCORE CD")

(B)    *JANIS IAN: Live At The Bottom Line (August 5 & 6, 1980) 35th Anniversary Remaster Edition* (the "ARCHIVE CD"); and

(C)    the master recording of Janis Ian's performance of *AT SEVENTEEN* embodied in the compilation album entitled *In Their Own Words Vol 1* (the "2015 ITOW CD Reissue").

The CDs were published with appropriate copyright notices, and U.S. copyright registrations have been filed with the U.S. Copyright Office.  Plaintiff is awaiting receipt of the registration certificates.  The respective U.S. Copyright Office Receipt Case Numbers are 1-2920771021, 1-2920771119 and 1-2920885694.

2

4.      The Club opened in New York City on February 12, 1974.  In the 30 years of the Club's operation Janice Ian performed there at least twenty times, and some of those performances were recorded by the Club's sound engineer on the Club's audio equipment.   The songs embodied in the ENCORE CD are her live performances with her band at the Club on August 5&6,1980, plus two March 7, 1991 solo performances of the songs *AT SEVENTEEN* and *SOCIETY'S CHILD.*

5.      Janis Ian knew, and approved the fact that, her performances at the Club were being recorded, and that the recordings were owned by the Club but could not be used for any purpose without her approval.

6.      The March 7, 1991 solo performances were a part of the Club's *IN THEIR OWN WORDS* Songwriters' Series, each show comprised of four singers/songwriters.  The Club conceived, organized, presented, staged, directed, advertised and promoted each show.  That show was recorded by the Club. The Master of Ceremonies for that show, engaged by the Club, interviewed each performer from the stage, throughout the show, asking questions that resulted in the performer deciding then and there which song to sing from the performer's extensive catalog of songs.  The songs thus selected by each singer/songwriter resulted from the topics the interviewer raised in his on-stage discussions with the performer.  Therefore, the interviewer was an integral part of the shows and the resulting performances, because the topics the interviewer brought up had an important influence regarding the songs the performer selected in that set.

7.      On or about March 14, 1991, as to *AT SEVENTEEN,* recorded at the March 7, 1991 show, Janis Ian signed a consent to Plaintiff, ". . . allowing the recording of said performance to be used in its entirety as part of a compilation collection of the best moments of the series, *IN THEIR OWN WORDS,* to be produced and released by RAZOR & TIE RECORDS

3

. . ." That consent recited the consideration Janis Ian would receive. It is attached hereto as **EXHIBIT 1**.

8.      On or about March 24, 1994, Janis Ian signed a contract with Razor & Tie Records ("Razor & Tie") covering her royalties from Razor & Tie and grant of rights for a term of years to embody the March 17, 1991 recording of *AT SEVENTEEN* in the compilation CD record entitled *IN THEIR OWN WORDS – Volume One* (the "R&T Compilation CD"), commercially released in 1996 under the Razor & Tie trademark and label. That contract is attached hereto as **EXHIBIT 2**. It is an unsigned copy, but has been supplied to Plaintiff by Janis Ian's attorney, John C. Beiter, Esquire, with his representation that it is the operative agreement covering the R&T Compilation CD. Plaintiff also believes this is the agreement that was executed by Razor & Tie and Janis Ian.

9.      The recording of *AT SEVENTEEN* in the R&T Compilation CD and all 14 of the other master recordings embodied in that CD, performed by other singers/songwriters, were licensed by the Club to Razor & Tie.

10.     From the inception of The Bottom Line Record Company, LLC in 1996, the Club transferred to Plaintiff ownership of the recordings made at the Club that Plaintiff elected to release commercially as phonorecords, including the right to copyright those recordings.

11.     On or about June 30, 1998 Janis Ian entered into an agreement with Plaintiff, which was also a mechanical license agreement licensing her songs, covering the ENCORE CD (the "Encore Contract"), attached hereto as **EXHIBIT 3**. On page 1, in the second sentence of the RELEASE COMMITMENT paragraph, Janis Ian acknowledged that "we [The Bottom Line Record Company, LLC] are the owners of the Masters. . . ."

4

12.     The Encore Contract constituted acknowledgement of and consent to the Club's recording and owning her performances, and it contained various approval rights for Janis Ian, customary for established and successful recording artists, as to usages of the master recordings embodied in the ENCORE CD (the "Encore Masters"). She had right of approval for compilation uses, coupling with other recordings, synchronization, premium records, sampling, as well as provisions for her approval of functions such as mixing, re-mixing and enhancements, liner notes, cover artwork, advertising and publicity materials, not to be unreasonably withheld or delayed. Janis Ian reserved the absolute discretion to withhold her approval for merchandising rights.

13.     Janis Ian was represented for the Encore Contract by John C. Beiter, Esquire. The Encore Contract was made in New York and governed by New York law applicable to agreements to be performed entirely in New York. All of the recorded performances were rendered in New York City, at the Club.

14.     The Encore Contract contained a Schedule "A" of 16 selections for the ENCORE CD, which, in effect, was a tentative list. Hank Medress, then President of Plaintiff, and Janis Ian mutually agreed on the recordings ultimately used. A number of months were required to prepare, assemble and complete the ENCORE CD for release. Plaintiff commercially released the ENCORE CD in February, 1999. Plaintiff owned the copyrights in the Encore Masters, and manufactured and distributed the ENCORE CD with the following copyright notice:

℗© 1999 The Bottom Line Record Company, LLC *(and address)*.

*ALL RIGHTS RESERVED.*

5

15.     The ENCORE CD varied from the Encore Contract's Schedule "A" in important respects:  the CD contained 12 Encore Masters instead of 16.  Eight of the Encore Masters were on the Schedule "A" list, and six different, substitute Encore Masters were selected by Plaintiff and approved by Janis Ian for the ENCORE CD.  Consistently from and after commercial release of the ENCORE CD in 1999 Janis Ian, in various ways, promoted the ENCORE CD, referred fans and others to that CD, and purchased copies at the artist price for sale at her performances and on her website.

16.     From 1980 through most of 2015, Janis Ian did not claim ownership of any recordings of her performances at the Club, did not claim she had the right to copyright any of those recordings or that any of those recordings were fixed without her authorization.  In the ensuing 17 years from the execution of the Encore Contract until June, 2015, Janis Ian did not object to the content of the ENCORE CD, or omissions, if any, of submitting elements to her for approval, and she did not object to Plaintiff's ownership of the copyrights in the Encore Masters or to the packaging or sequencing or mixing or mastering of the ENCORE CD, and she did not, to Plaintiff's knowledge, terminate or attempt to terminate, rescind or revoke the Encore Contract.

17.     From 1980 until she entered into the Encore Contract, and for an additional17 years thereafter, Janis Ian did not (i) claim ownership of any recordings the Club fixed of her live performances, or (ii) take any actions or make any claims that were indicia of her right to claim copyright ownership of any of those recordings.

18.     In June, 2015, after commercial release of the ARCHIVE CD and the 2015 ITOW CD Reissue, Janis Ian, for the first time, claimed those CDs were "unauthorized" sound

6

recordings because she had not been asked to approve certain elements of the ARCHIVE CD and she had not been asked to approve inclusion of *AT SEVENTEEN* in the 2015 ITOW CD Reissue.

19.     Negotiations began in July, 2015 to assure Janis Ian she had not been intentionally ignored for those CD releases.  The negotiations did not go well because she kept making new demands and had new complaints after seemingly committing to terms for an agreement. Substantially after commercial release of the ARCHIVE CD and the 2015 ITOW CD Reissue Janis Ian changed her claim from "unauthorized" recordings to claiming those CDs infringe her copyrights in the master recordings; and she now asserts that she will institute an action for intentional copyright infringement and for statutory damages unless Plaintiff immediately assigns and turns over to her personal corporation, Rude Girl Records, Inc., for her own, unrestricted use, all recordings of her live performances at the Club, in every form in which they exist, and all existing materials, such as photos of Ms. Ian, publicity material, liner notes and cover artwork.  She claims she owns the copyrights in the recordings.

**PLAINTIFF'S ALLEGATIONS RELATING TO DEFENDANTS' INFRINGEMENT CLAIMS:**

20.     Before April, 2015, Allan Pepper, President of Plaintiff and of the Club, and a good friend of Janis Ian's for more than 35 years, decided to reissue the ENCORE CD in a new Archive Collection Series for Plaintiff's prior CD releases of various featured artists and new, previously unreleased CDs from the more than 300 recorded shows at the Club from a variety of featured artists.

21.     Not later than on or about April 2, 2015 Allan Pepper called Janis Ian and informed her that Plaintiff had a new distributor and Plaintiff was preparing to reissue the ENCORE CD in the new Archive Collection Series.  He also mentioned to her that the R&T

Compilation CD would be reissued in the new Archive *In Their Own Words* Songwriters' Series. Janis Ian received all this news without objection and in that conversation she consented to being interviewed by Gregg Bendian so that he would write the new liner notes for the ARCHIVE CD.

22.     Gregg Bendian was also in charge of preparing and assembling the ARCHIVE CD and the 2015 ITOW Reissue, and arranging for them to be ready to be packaged and pressed.

23.     Except for the new liner notes, contemporary credits, and the photographs of Janis Ian for the ARCHIVE CD packaging, the ARCHIVE CD is an exact reissue of the ENCORE CD, under the Bottom Line Archive label and tradename, and it was released pursuant to Plaintiff's rights under the Encore Contract.  All the master recordings in the ARCHIVE CD reissue are exactly the same Encore Masters embodied in the Encore CD, in the same sequence. They were not re-mixed.  Upon information and belief, the photographs used for the ARCHIVE CD packaging are from the materials Plaintiff paid for and received through the years from Janis Ian's personal photographer.  The ARCHIVE CD contains an appropriate sound recording copyright notice for Plaintiff, and Plaintiff submitted the ARCHIVE CD for copyright registration.

24.     Plaintiff reasonably relied on the decades of mutually good, warm relations with Janis Ian and her acceptance of the course of dealing with her for preparing the ENCORE CD for release in 1999.  In good faith, Plaintiff believed that as the copyright owner of the Encore Masters and the fact that master recordings in the ARCHIVE CD reissue were exactly the same as, and were approved in 1998 by Janis Ian for, the ENCORE CD, the ARCHIVE CD reissue of the exact same recordings in a new phonorecord series and with up-dated liner notes was covered by and permitted under the terms of the Encore Contract.  Plaintiff also reasonably relied on custom and usage in the record industry for release of reissues.

25.     From at least a date in May, 2015 until on or about June 16, 2015 Janis Ian knew

the ENCORE CD was being prepared for reissue as the ARCHIVE CD, and did not ask for any

elements of the ARCHIVE CD to be given to her for review and reasonable approval.  On or

about June 16, 2015 Janis Ian acknowledged that the ARCHIVE CD was "pre-released"

selectively and scheduled for imminent commercial release, and she requested a copy, which was

promptly supplied to her.

26.     On or about June 16, 2015 the ARCHIVE CD was offered by Plaintiff to dealers

for preorders, and beginning June 9, 2015 Plaintiff's mailings to the press and media for reviews

were already sent.

27.     In her June 19, 2015 email to Allan Pepper **(EXHIBIT 4)** Janis Ian alleged that

she owned the 1991 recording of *AT SEVENTEEN* that was on the ARCHIVE CD and it could

not be used for the ARCHIVE CD.  She ignored the fact that exact the same recording had, since

1999, been one of the "bonus tracks" on the ENCORE CD.  In that same communication she

asserted that the ENCORE CD and the ARCHIVE CD contained recordings she had not heard or

approved and admitted she never claimed to Plaintiff that Plaintiff breached the Encore Contract.

She further admitted she had not previously claimed that she owned some or all of the Encore

Masters, and admitted she had not refused to permit Plaintiff to embody the Encore Masters in

the ARCHIVE CD.

28.     Janis Ian's June 19, 2015 email demonstrated that she was under the

misapprehension that the bonus cut of *AT SEVENTEEN* had not been used in the ENCORE CD,

and asserted that she thought she owned that particular master.

29.     Because of Allan Pepper's long friendship with Ms. Ian, he wanted to make

reasonable concessions to assuage her dissatisfactions, particularly when he realized that it was

obvious Plaintiff's staff had not reviewed the Encore Contract to be aware of and to comply with the provisions that would have kept her informed of how the ARCHIVE CD was being assembled for release, and had not double-checked with her the information of record for the publishing credits despite his explicit instructions that the publishing credits should be reviewed with her.  Mr. Pepper was no longer familiar with the provisions set out 17 years ago in the Encore Contract.  He apologized if Plaintiff's staff had not kept Ms. Ian "in the loop" about elements of the ARCHIVE CD.

30.    From and after June 23, 2015 Janis Ian's attorney, John C. Beiter, Esq. communicated with Plaintiff's attorney at that time to amend the Encore Contract in accordance with Janis Ian's concerns about the ARCHIVE CD and the 2015 ITOW CD Reissue.  The negotiations also tangentially dealt with the *JESSE* recording from the ENCORE CD, and, of course, in the ARCHIVE CD, that was included in a promotional sampler that was not manufactured as a CD and was not made available for sale in any phonorecord configuration (the "Noisetrade Sampler").  The Noisetrade Sampler was a cyber means of promoting and informing the public of the availability of the ARCHIVE CD reissue, something which is customary practice and usage in the record industry.

31.    Negotiations with Mr. Beiter initially took place from July until September 24, 2015.  During that period, but after the June 9, 2015 commercial release of the ARCHIVE CD, Janis Ian changed her claim that the ARCHIVE CD and the 2015 ITOW CD Reissue contained "unauthorized" recordings to a claim that Janis Ian owned the recordings in the ARCHIVE CD and *AT SEVENTEEN* embodied in the 2015 ITOW CD Reissue, so that those CDs and the Noisetrade Sampler constitute Plaintiff's intentional copyright infringements.  She further demanded that all the recordings of Janis Ian's live performances be assigned to Janis Ian's

10

personal corporation, Rude Girl Records, Inc., and that Plaintiff and Plaintiff's distributor and licensees cease all sales of the subject phonorecords. Those infringement claims all stem from her assertion that she owns the copyrights in all the recordings, released and unreleased, because they contain her performances, an assertion without basis in law.

32.     Janis Ian now asserts that she will institute an action against Plaintiff for intentional copyright infringement and for damages unless Plaintiff immediately assigns the masters in the ARCHIVE CD and ENCORE CD, ceases sale of the 2015 ITOW CD Reissue, and turns over to her Rude Girl Records, Inc., for her own, unrestricted use, all recordings of her live performances at the Club, in every form in which they exist, and all materials that exist, such as photos of Ms. Ian, publicity material, liner notes and cover artwork.

**PLAINTIFF'S ALLEGATIONS RELATING TO THE 2015 ITOW CD REISSUE:**

33.     When the term of the R&T agreement with Janis Ian for the R&T Compilation CD expired, R&T returned all 15 of those masters to Plaintiff and all of R&T's rights therein.

34.     The 2015 ITOW CD Reissue embodies exactly the same masters as the R&T Compilation CD and exactly the same liner notes, but the short biographies of the artists are omitted.

35.     Plaintiff reasonably expected that Janis Ian's previous permission to embody the *AT SEVENTEEN* master in the R&T Compilation CD, among that impressive array of singers/songwriters, and her failure to object when Allan Pepper told her the CD would be reissued by Plaintiff, was a general consent to compilation use of that master in what is, in effect, a reissue of exactly the same compilation phonorecord to which she agreed and consented 21 years ago, when Plaintiff licensed that *AT SEVENTEEN* master for compilation use.

36.     After initially claiming that inclusion of *AT SEVENTEEN in* the 2015 ITOW CD Reissue was an unauthorized use by Plaintiff, Janis Ian changed her claim and has threatened to institute action against Plaintiff for intentional copyright infringement based upon her claim that she owns the copyright in that master recording.

## JURISDICTION AND VENUE

37.     This is a declaratory judgment action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§2201-02 and an action for anticipatory breach of contract action pursuant to 28 U.S.C. §1367.  This Court has subject matter jurisdiction of this federal question pursuant to the U.S. Copyright Act of 1976, 17 U.S.C. and 28 U.S.C §1331; and supplemental jurisdiction regarding the contract action pursuant to 28 U.S.C. §1367

38.     Venue is proper because in this Judicial District:

(a)      Defendant Janis Ian contracted with Plaintiff for the recordings Plaintiff commercially released;

(b)      Janis Ian rendered her performances in this district for the recordings that are the subject of this action;

(c)      all of the property that is the subject of this action is situated in this district;

(d)      upon information and belief, both Janis Ian and Defendant Rude Girl Records, Inc. periodically transact business in this district, including, without limitation, business regarding the musical compositions embodied in the subject recordings and sale of Janis Ian's merchandise through Defendants' websites;

(e)      Janis Ian periodically performs in this district for remuneration;

(f)      the events at issue arose entirely in this district;

12

(g)     Janis Ian's contracts with Plaintiff are governed by and are to be construed and interpreted under New York, without regard to conflicts of laws principles; and

(h)     Plaintiff is further informed and believes that Janis Ian previously consented to personal jurisdiction in this district under at least one contract that involves one of the recordings that are the subject matter of this action.

## FIRST CAUSE OF ACTION:
### Declaratory Judgment Affirming Plaintiff's Ownership of the Sound Recording Copyrights.

39.     Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1— 38 above.

40.     Defendant Janis Ian's claim to ownership of copyrights of the recordings fixed by Plaintiff are based on claim as to the provisions of the U.S. Copyright Act, which does not entitle her to such ownership simply because she rendered the performances that Plaintiff recorded. The U.S. Copyright Act gives Janis Ian no such right or claim of right.

41.     In 1998 Janis Ian lawfully contracted with Plaintiff, for good and substantial consideration, to authorize Plaintiff to embody in the ENCORE CD 11 live recordings which she performed for Plaintiff in 1980, together with two recordings which she performed for Plaintiff in 1981, and by that contract she agreed, acknowledged, ratified, approved, adopted and confirmed, and subsequently further did so by her actions and forbearance, that Plaintiff owned those 13 recordings.  Plaintiff appropriately claimed sound recording copyright ownership of those 13 master recordings and the copyright ownership of the ENCORE CD, and the ARCHIVE CD.

42.     Pursuant to Plaintiff's rights under the 1998 Encore Contract with Janis Ian, Plaintiff lawfully and in good faith reissued those exact same ENCORE CD master recordings in

the ARCHIVE CD and Janis Ian cooperated to enable the ARCHIVE CD to be commercially released.

43.     At no time in the 35 years from 1980 until the middle of 2015 did Janis Ian claim to Plaintiff any copyright ownership in any live recordings which she performed for Plaintiff at the Club. She has acknowledged, through her attorney, that the ARCHIVE CD is a reissue of the ENCORE CD.

44.     In good faith, and in reliance on Plaintiff's copyright ownership of the *AT SEVENTEEN* recording and Janis Ian's prior approval of use of that live recording for the R&T Compilation CD licensed to R&T by the Club, in 2015 Plaintiff reissued the exact same compilation in the 2015 ITOW CD Reissue as part of The Archive Collection Series, without timely objection from Janis Ian.

45.     Janis Ian claims that the 2015 ITOW CD Reissue is a willful infringement of her copyright in the *AT SEVENTEEN* live recording. For all of the reasons stated above, her claim is false, in complete disregard of prevailing case and statutory law and is an effort to obtain by threats of expensive, protracted litigation what she does not have the right to obtain from Plaintiff.

46.     Janis Ian has made unreasonable demands that amount to an antagonistic assertion of rights that have made it impossible to resolve this dispute despite Plaintiff's reasonable efforts to resolve it. Janis Ian's actions and threats have seriously interfered with and impeded Plaintiff's ability to market and sell the subject phonorecords.

47.     In light of the parties' conflicting positions, an actual, immediate, substantial and justiciable controversy exists over the parties' respective rights and obligations.

14

48.    There is a current, definite and concrete controversy between Plaintiff and
Defendants having adverse legal interests, and the controversy is sufficiently immediate and real
to warrant the issuance of a declaratory judgment under 38 U.S.C. §2201. The controversy is
amenable to specific relief through a decree of a conclusive character.

49.    Defendants' claims are invalid. Plaintiff is the sole owner of the copyrights in the
sound recordings that are the subject matter of this Complaint.

50    A declaratory judgment in this case would serve a useful purpose in clarifying and
settling the respective rights and obligations of the parties, and it will terminate and afford relief
from the uncertainty, insecurity and emotional stress to the owners of Plaintiff resulting from this
controversy.

51.    Plaintiff requests the Court to enter an Order and Judgment that Plaintiff is the
sole copyright owner of the master recordings embodying Janis Ian's live performances at the
Club, that the ENCORE CD, ACHIVE CD and 2015 ITOW CD Reissue do not infringe any of
Defendants' rights, that Plaintiff, and not Defendants, are entitled to clear title of the ownership
of the sound recording copyrights that are the subject matter of this action, and to quiet title to
those copyrights.

52.    Plaintiff has no adequate remedy at law.

<h3 style="text-align:center">SECOND FIRST CAUSE OF ACTION:<br>Anticipatory Breach of Contract</h3>

53.    Plaintiff re-alleges and incorporates by reference the allegations in paragraphs
1— 53 above.

54.    Janis Ian agreed in the Encore Contract, and ratified by her actions, that Plaintiff
owned the master recordings to be embodied in the ENCORE CD.

15

55.    The Encore Masters have been reissued in Plaintiff's ARCHIVE CD, pursuant to Plaintiff's rights as the owner of the Encore Masters and copyright owner of the ENCORE CD.

56.    Defendants now claim, without basis in statutory or case law, that Janis Ian owns the copyrights and seeks to use those recordings for sound carriers, and possibly other uses.

57.    Defendants' claims violate Janis Ian's agreements and warranties in the Encore Contract and may interfere with Plaintiff's business relationships and with the sale, marketing and licensing of the Plaintiff's sound carriers.

58.    Plaintiff requests the Court to enter an Oder and Judgment of anticipatory breach of the Encore Contract by Defendants.

59.    Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order and Judgment as follows:

(A)    Declaring that Plaintiff is the rightful sound recording copyright owner of the 13 master recordings contained in the ENCORE CD and the ARCHVE CD reissue, inclusive of the *AT SEVENTEEN* recording embodied in the Reissued 2015 ITOW CD Reissue, and that those sound recordings do not infringe any sound recording rights or other rights of Defendants.

(B)    Declaring that Plaintiff owns and is entitled to copyright all other unreleased live recordings of Janis Ian's performances fixed at and by The Bottom Line Theater-Cabaret, but specifying, in accordance with the June 30, 1998 Encore Contract,

that Plaintiff may not use the unreleased live recordings for any purpose without Janis Ian's prior written consent.

(C)     Declaring that Defendants have no copyright interests or right to claim copyright interests in any live recordings of Janis Ian's performances fixed at and by The Bottom Line Theater-Cabaret prior to this date.

(D)     Declaring that Plaintiffs may freely sell and market the ENCORE CD, the ARCHIVE DC and the 2015 ITOW CD Reissue without interference from Defendants.

(E)     Awarding to Plaintiffs the damages it has suffered by reason of the acts of Defendants complained of herein, said amounts to be determined at trial.

(F)     Awarding to Plaintiff its attorneys' fees, and awarding costs and expenses.

(G)     Awarding any and all such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Dated:  February 2, 2016

By:  _____
        Philip S. Kurnit (0647)

Philip S. Kurnit, Esquire
48 South Park Street, Unit #615
Montclair, NJ 07042-2788
Phone:  973-746-4333
Fax:  973-860-2221

Attorney for Plaintiff
Bottom Line Record Company

i2936334.comp.bot.ji.2

17